**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| LYNN ELVIN AMBLER, | ) | Case No.: 5:12-CV-05518-EJD |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION TO COMPEL** |
| v. | ) | **ARBITRATION AND STAY** |
| | ) | **PROCEEDINGS; DENYING** |
| BT AMERICAS INC. AND DOES 1 | ) | **DEFENDANT'S MOTION TO** |
| THROUGH 10, INCLUSIVE, | ) | **DISMISS** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | **[Re: Docket No. 23]** |
| | ) | |

Presently before the court in this age discrimination and wrongful termination action is Defendant BT Americas Inc.'s ("Defendant") Motion to Compel Arbitration and to Dismiss, or in the alternative, Stay Proceedings.  Dkt. No. 23.  The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing.  The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Having fully reviewed the parties' briefing, and for the following reasons, the court GRANTS Defendant's Motion.

## I. Background

Plaintiff Lynn Elvin Ambler ("Plaintiff")  filed the instant action on September 21, 2012 in the Superior Court of California, Santa Clara County, raising claims against Defendant, his former employer, for: (1) unlawful discrimination based on age; (2) failure to prevent discrimination; (3)

wrongful termination in violation of public policy; (4) breach of contract; (5) breach of covenant of good faith and fair dealing; (6) intentional misrepresentation; (7) negligent misrepresentation; (8) wages wrongfully withheld; and (9) intentional infliction of emotional distress.  See Declaration of Harold M. Brody ISO Notice of Removal Ex. A, Dkt. No. 2-1.  On October 25, 2012, Defendant removed the action to this court on the basis of diversity jurisdiction.  See Dkt. No. 1.

On June 7, 2013, Defendant filed the instant Motion to Compel Arbitration.  See Dkt. No. 23.  Defendant seeks to compel arbitration on the basis of an arbitration provision in a Confidential Information and Invention Assignment Agreement (the "Agreement") that Plaintiff signed with a predecessor company to Defendant—International Network Services ("INS")—at the beginning of his employment with INS in January 1995.  See Dkt. No. 23-2 ¶ 6.  Over the course of Plaintiff's sixteen years' employment, his employer changed hands at least three times, ultimately becoming fully integrated into Defendant's business.  In 1999, Lucent Technologies acquired INS and operated it as a division of Lucent until 2002. Dkt. No. 23-2 ¶ 9.  In 2002, senior INS management, including Plaintiff, negotiated and completed a purchase and spinout of the INS business from Lucent.  Id. at ¶ 10.  From that point until 2007, the company again operated under the name INS.  See Dkt. No. 23-2 at ¶¶ 10-12.  In early 2007, Defendant acquired this new INS. Id. at ¶ 12.  Plaintiff remained employed with Defendant until his termination on April 29, 2011. Id. at ¶ 6.  To the best of the court's knowledge, INS remains integrated into Defendant today.  See Dkt. No. 23-2 ¶ 13.

### a.  The Agreement

Plaintiff executed the Agreement as a condition of his original employment with INS on January 7, 1995.  See Declaration of Jamie Newell ISO Def. Mtn to Compel Arb. ("Newell Decl.) Ex. A, Dkt. No. 23-4.  The Agreement is a four-page document that governs topics such as the nature of Plaintiff's employment, the handling of confidential information, ownership of inventions and other intellectual property issues, rights and obligations in the event Plaintiff leaves INS, and dispute resolution procedures.  Id.  Particularly relevant to this motion, the Agreement contains the following provisions:

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS

**At-Will Employment** - I understand and acknowledge that this Agreement is not an employment agreement, and that my employment with the Company is for an unspecified duration and constitutes 'at-will' employment. I acknowledge that nothing in this Agreement gives me any right to continued employment, and that my employment relationship with the Company may be terminated at any time, with or without good cause or for any or no cause, at the option of either of the Company or myself, with or without notice. Id. at ¶ 1.

**Arbitration** – Except as provided in Section 9(b) below, I agree that any dispute or controversy arirsing out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Santa Clara County, California, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses. Id. at ¶ 9(a).

**Survival** – This Agreement (i) shall survive my employment by the Company, (ii) inures to the benefit of the Company, its successors and its assigns, and (iii) is binding upon my heirs and legal representatives. Id. at ¶ 10(d).

Though he was employed at Defendant and its predecessors from his original date of hire until his 2011 termination, Plaintiff does not appear to have signed or have been asked to sign a new employment agreement or Confidential Information and Invention Assignment Agreement since his original hire date with INS in 1995.

## II.    Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., espouses a general policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid,

3

United States District Court
For the Northern District of California

1   irrevocable, and enforceable." 9 U.S.C. § 2.  Upon the request of either party to the agreement, a

2   court may compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4.

3   However, when considering a party's request, the court is limited to determining (1) whether a

4   valid arbitration agreement exists, and if so (2) whether the arbitration agreement encompasses the

5   dispute at issue.  9 U.S.C. §§ 2-4; Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir.

6   2008) (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc. 207 F.3d 1126, 1131 (9th Cir. 2000)).

7   If these conditions are satisfied, the court is without discretion to deny the motion and must compel

8   arbitration.  See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the

9   [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that

10  district courts shall direct the parties to proceed to arbitration.").

11          In making each of these determinations, the court must apply ordinary state law principles

12  governing the formation and construction of contracts. See First Options of Chicago, Inc. v.

13  Kaplan, 514 U.S. 938, 944 (1995); Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir.

14  2007).  To determine the validity of the agreement, the court must look to "the same grounds as

15  exist in law or in equity for the revocation of any contract," such as fraud, duress or

16  unconscionability. 9 U.S.C. § 2; Rent–A–Center, West, Inc. v. Jackson, —— U.S. ——, 130 S.Ct.

17  2772, 2776, 177 L.Ed.2d 403 (2010).  Similarly, in interpreting the scope of an arbitration

18  provision, the court is mindful that "arbitration is a matter of contract and a party cannot be

19  required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Tech.,

20  Inc. v. Commc'n Workers, 475 U.S. 643, 648 (1986) (internal citations omitted).  However, any

21  doubts as to arbitrability must be resolved in favor of coverage and "[a]n order to arbitrate the

22  particular grievance should not be denied unless it may be said with positive assurance that the

23  arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 650.

24  **III.    Discussion**

25  **a.  Whether a Valid Agreement Exists Between the Parties**

26          First, the court must determine whether a valid agreement to arbitrate exists between the

27  parties.  Cox, 533 F.3d at 1119.  Arbitration agreements are generally presumed to be valid.

28
                                                            4

1    Chiron, 207 F.3d at 1130.  Thus, as the party seeking to avoid arbitration, Plaintiff bears the burden

2    of demonstrating the agreement is invalid.  Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79,

3    91 (2000).

4           **1.  Whether Defendant Standing has Standing to Enforce the Agreement**

5                  **A.  Signature**

6           Plaintiff acknowledges that he signed the Agreement as a condition of his employment with

7    INS in January 1995; however, he argues that the Agreement cannot be enforced against him

8    because INS did not sign it.  The court finds this argument to be disingenuous.  While the FAA

9    authorizes the court to enforce only written agreements to arbitrate (9 U.S.C. § 3), it does not

10   require the written agreements to be signed.  Here, the parties do not dispute that the Agreement is

11   in writing—both parties attach it to their respective declarations.  See Dkt. Nos. 23-2, 24-1 Ex. 2.

12   The Agreement itself clearly indicates INS's intent to bind itself by defining the contracting party

13   ("the Company") as INS, "its subsidiaries, affiliates, successors or assigns" and by stating the

14   requirement that Plaintiff sign it "as a condition of" his employment.  Id.  Having accepted

15   Plaintiff's signed copy of the Agreement and thereafter accepting Plaintiff's work for many years,

16   INS would in fact be equitably estopped from arguing it was not bound by the Agreement.  See

17   Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002).  Defendant does not make

18   such an argument here, but Plaintiff's argument must fail for the same reasons.  Accordingly, that

19   INS did not sign the Agreement does not deprive Defendant of standing to compel arbitration.

20              **B.  Defendant's Relationship to INS**

21          Plaintiff also argues that Defendant lacks standing to enforce the Agreement against him

22   because Defendant is not in privity with the original INS.  The Agreement contains a survival

23   clause, which specifies that the Agreement, including its arbitration clause, inures to the benefit of,

24   inter alia, INS's "successors" and "assigns." Dkt. No. 23-4 at ¶ 10(d).  Despite this clear language,

25   Plaintiff contends that Defendant cannot enforce the Agreement because it is not a successor of

26   INS.  Particularly, Plaintiff insists that a break in corporate successorship occurred when Plaintiff

27   and other executives spun off INS from Lucent in 2002.

28

United States District Court
For the Northern District of California

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS

1    As a general matter, "arbitration is a matter of contract and a party cannot be required to

2    submit to arbitration any dispute which he has not agreed so to submit." AT & T, 475 U.S. at 648.

3    In cases where no agreement to arbitrate exists between the parties, the question of whether a

4    nonsignatory defendant may rely on an arbitration agreement between the plaintiff and another

5    entity must be answered "not by state law, but by the federal substantive law of arbitrability."

6    Boucher, 127 Cal. App. 4th at 268 (citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen

7    GmbH, 206 F.3d 411, 417 n. 4 (4th Cir. 2000); Metalclad Corp. v. Ventana Envtl. Org. P'ship et

8    al., 109 Cal. App. 4th 1705, 1712-13 (Cal. Ct. App. 2003)).  Federal courts have consistently held

9    that a nonsignatory may compel a signatory to arbitrate, under five "limited exceptions:" (1)

10   incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5)

11   estoppel.  Boucher, 127 Cal. App. 4th at 268 (citations omitted); See Lau v. Mercedes-Benz USA,

12   LLC, No. 11-cv-1940, 2012 WL 370557, * 3 (N.D. Cal. Jan. 31, 2012).

13   Plaintiff appears to argue that Defendant has not assumed the right of old INS to enforce the

14   Agreement because Defendant is not a successor of the old INS.  The term "successor" generally

15   means a corporation that by merger, consolidation, or other legal reorganization has been

16   transferred rights by and has assumed performance obligations of another corporation.  See Black's

17   Law Dictionary (9th ed. 2009) (defining successor as "[a] corporation that, through amalgamation,

18   consolidation, or other assumption of interests, is vested with the rights and duties of an earlier

19   corporation").  In contract cases, California courts have defined "successor" as "one who takes the

20   place that another has left, and sustains the like part or character."  Citizens Suburban Co. v.

21   Rosemont Dev. Co., 244 Cal. App. 2d 666, 676 (Cal. Ct. App. 1966).  This definition exceeds the

22   definition of "assignment," for it is "designed to eliminate the necessity for an express assumption

23   of burdens."  Id.

24   Plaintiff has not met his burden of establishing that the Agreement is invalid because

25   Defendant is not a successor of INS.  To support his argument on this issue, Plaintiff points only to

26   publicly available entity status information on California's and Delaware's respective Secretary of

27   State's websites, business registration information from Westlaw, vague references to news reports

28

6

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS

on INS's transitions, and a letter from David Butze, the President and CEO of the new INS crediting Plaintiffs' employment with Lucent and its predecessors to Plaintiff's original start date of January 18, 1995.[1]  See Declaration of Conor Granahan ISO Pl. Opp'n, Dkt. No. 24-1.  Proof that INS was acquired or otherwise legally reorganized is insufficient to show that INS's rights and obligations ceased to exist at any particular point in time.  To the contrary, such transactions seem to suggest a chain of corporate successorship that would assume INS's rights and duties.  Without any evidence clearly demonstrating that Defendant or any of its predecessors failed to assume or rely on the Agreement, or any of INS's other rights or obligations, the court cannot find that Plaintiff has met his burden to show a break in corporate successorship.

Moreover, from the scant allegations and evidence Plaintiff does supply, it appears that the new INS  did in fact "[take] the place" that Lucent and the original INS before it "had left" and "sustained the like part or character" of its predecessors.  Plaintiff has alleged as much.  In reviewing the Complaint, the court notes that Plaintiff alleges he "began his career with [Defendant] and its predecessors working for…[INS]" and that he "successfully worked for [Defendant] and its predecessors for 16 years."  ¶¶ 6, 8.  Having alleged that he worked with Defendant and its predecessors—the antonym of successors—for sixteen years—i.e. from 1995 until his termination in 2011—Plaintiff appears to have tacitly conceded a chain of successorship from the original INS to Lucent to the new INS to Defendant.

Additionally, Plaintiff alleges that he and his fellow senior managers "completed a purchase and spinout of the INS business from Lucent."  That the new INS was "purchased" and spun out from Lucent, instead of simply formed anew, e.g. as a competitor without the purchase of any assets or rights from Lucent, suggests that the new INS "took the place" of the INS business within Lucent.  Moreover, the letter from Mr. Butze crediting Plaintiff's employment to his 1995 start date

---

[1] The court notes that Plaintiff filed an additional declaration in support of his Opposition to Defendant's Motion to Compel Arbitration on July 26, 2013—nearly a month past the filing of his Opposition and two weeks past the filing of Defendant's Reply.  See Dkt. No. 33.  As Plaintiff did not seek leave to file this late declaration, he is in clear violation of Local Rule 7-3(d).  Accordingly the court SUSTAINS Defendant's Objections to Plaintiff's Late Filed Declaration (Dkt. No. 36) and will not consider Plaintiff's declaration in deciding this motion.  However, the court notes that even if it were to consider this declaration, the outcome on the instant question would not be affected because Plaintiff's declaration, like the Granaham declaration, fails to show that Defendant and its predecessors did not assume the old INS's obligations as a result of the relevant merger, acquisition, or other legal reorganization.

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

at the original INS suggests that the new INS assumed the obligations, including those to its employees, which it inherited from Lucent, and by extension, from the old INS.  Thus from the evidence and argument presented, the new INS, and by extension, Defendant, which assumed the obligations of the new INS, can properly be considered a successor to Lucent and the original INS. Because the Agreement clearly inures to the benefit of INS's "successors," Defendant has standing to enforce the agreement.

### 2.  Unconscionability and Severability

Next, Plaintiff argues that the Agreement is invalid because its cost-splitting, attorney's fees, and forum selection provisions are unconscionable.  "Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable."  Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007).  Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, whereas substantive unconscionability focuses on one-sided or overly-harsh results.  Stirlen v. Supercuts, Inc., 51 Cal. App. 4t h 1519, 1532.  If the court determines portions of the Agreement at issue here to be unreasonable, "it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Cal. Civ. Code § 1670.5.

Defendant concedes that the Agreement is a contract of adhesion, and thus procedurally unconscionable.  See Dkt. No. 23 at 10; Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 113-115 (2000).  Thus, the court need only consider whether the challenged provisions are substantively unconscionable.  If the court determines the provisions are unconscionable, it must then determine whether any such provisions can be severed from the Agreement.

As to the question of substantive unconscionability, both parties point to this court's decision in Laughlin v. VMware, Inc., No. 11-cv-00530, 2012 WL 298230 (Feb. 1, 2012). Laughlin involved an agreement nearly identical to the one at issue here.  In fact, the only notable differences between the two agreements are their titles ("Employment, Confidential Information and Invention Assignment Agreement" in Laughlin compared to "Confidential Information and

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS

Invention Assignment Agreement" in this case) and the inclusion of an "Employment" section in

the <u>Laughlin</u> agreement defining what type of employment (regular, part-time, full-time temporary,

part-time temporary, or intern) the employee-signatory maintains.  <u>See</u> No. 12-cv-05518 Dkt. No.

23-4; No. 11-cv-00530 Dkt. No. 28-3.  In all other respects, including the "At-Will Employment"

provision and the wording and requirements of the challenged provisions, the agreements are

mirror images of each other.  <u>Id.</u>  Therefore, for the same reasons this court announced in <u>Laughlin</u>,

the court here finds the cost-splitting and attorney's fees provisions to be unconscionable, but finds

a legitimate business justification for the forum selection clause such that it is "not so unfairly one-

sided as to be deemed unconscionable."  <u>Laughlin</u>, 2012 WL 298230 at *5-6.

Similarly, as to severability, the court finds its reasoning in <u>Laughlin</u> applicable.  The

Agreement here, though it contains two unconscionable provisions, does not "indicate a systematic

effort to disadvantage Plaintiff."  <u>Id.</u> at *7.  Nor is the agreement "permeated by

unconscionability."  <u>Id.</u>  Accordingly, the court finds that the cost-splitting and attorney's fees

provisions may be severed from the Agreement, and that after doing so, the Agreement is

enforceable.

### b.  Scope of the Agreement

Finally, Plaintiff argues that even if the Agreement is valid, the court cannot enforce it here

because every claim in this case is related to his employment, but the scope of the Agreement is

limited to "the treatment of confidential information and inventions."  Dkt. No. 24 at 4.  While the

court acknowledges that the bulk of the Agreement relates to the treatment of confidential

information and the parties' intellectual property, it cannot go so far as to conclude that the

Agreement was limited to these topics.  Quite to the contrary, the Agreement explicitly covers the

nature of Plaintiff's employment.  It begins with an acknowledgement that Plaintiff was agreeing to

the provisions "as a condition of [his] employment" and "in consideration of [his] employment."

Dkt. No. 23-4.  Moreover, the very first provision is entitled "At-Will Employment" and states that

Plaintiff's employment is "for an unspecified duration," that Plaintiff cannot use the Agreement to

argue he has a right "to continued employment," and that he or INS could terminate the

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS

employment relationship "at any time, with or without good cause or for any or no cause…with or without notice."  Dkt. No. 23-4 ¶ 1.  Furthermore, the parties acknowledged that the Agreement represented "the entire agreement" between them "relating to the subject matter herein."  Dkt. No. 23-4 ¶ 10(b).  This consistent language makes clear that the Agreement purported to cover the parties' employment relationship.

The arbitration provision also makes its scope clear: it provides that "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Santa Clara County, California…."  Dkt. No. 23-4 ¶ 9(a).  As noted in <u>Laughlin</u>, such language renders the arbitration provision quite inclusive.  2012 WL 298230 at *8 (citing <u>Bono v. David</u>, 147 Cal.App.4th 1055, 1067  (2007) (noting that a broad clause includes language such as "any claim arising from or related to this agreement ...."); <u>see also</u> <u>eFund Capital Partners v. Pless,</u> 150 Cal.App.4th 1311, 1322 (2007) ("[t]he language 'any dispute or other disagreement' extends beyond contract claims to encompass tort causes of action."); <u>Shanghain Freeman Lifescience v. ABC–Amega</u>, No. G041471, 2010 WL 1612208, at *4 (Cal Ct. App. April 22, 2010) (interpreting a broad arbitration clause to cover any legal liabilities between the parties that "have their roots in the relationship between the parties which was created by the contract."); <u>Hopkins & Carley, ALC v. Elite</u>, 2011 WL 1327359, at *5 (N.D. Cal. April 6, 2011)).  Accordingly, the court finds no justification to depart from the provision's clear language: the arbitration provision must apply to "any dispute or controversy" on subjects covered by the Agreement.  Having found that the Agreement constitutes the parties' "entire agreement…relating to the subject matter of," <u>inter alia</u>, Plaintiff's employment, the court finds that Plaintiff's employment claims are covered by the Agreement's arbitration provision.  Dkt. No. 23-4 ¶ 10(b).

## IV.    Conclusion

For the foregoing reasons, the court concludes that the Agreement's Arbitration and Equitable Relief provision is procedurally and substantively unconscionable.  However, the substantively unconscionable provisions may be severed, and the arbitration clause may then be

10

enforced.  Plaintiff's claims as stated in his Complaint fall under the scope of the Agreement and, as such, shall be submitted for arbitration.

Accordingly, Defendant's Motion to Compel Arbitration is GRANTED.  The arbitration shall proceed without regard to the two provisions found unconscionable herein.  The court DENIES Defendant's Motion to Dismiss because the plain language of the FAA demonstrates that a stay, not a dismissal, is the appropriate course of action and because both Supreme Court and Ninth Circuit authority more strongly favor a stay over a dismissal.  See 9 U.S.C. § 3; Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (stating in dicta that § 3 "provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement"); Bushley v. Credit Suisse First Boston, 360 F.3d 1149, 1153 (9th Cir. 2004). Therefore, this action is STAYED in its entirety pending final resolution of the arbitration.  The clerk shall ADMINISTRATIVELY CLOSE this case.[2]

**IT IS SO ORDERED**

Dated: August 15, 2013



EDWARD J. DAVILA
United States District Judge

---

[2] This order does not preclude any party from moving to reopen this action, when appropriate.

11

Case No.: 5:12-CV-05518-EJD
ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; DENYING DEFENDANT'S MOTION TO DISMISS